**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RAY WILLIAMS,

                                          Plaintiff,

              - v -                                                     Civ. No. 9:06-CV-178
                                                                                    (DNH/RFT)

R. CALIDONNA, *Assistant Food Service Director,*
*Midstate Correction Facility*; LT. G. LAWRENCE,
*Security Housing Lt., Midstate Correction Facility*;
DEPUTY SUPT. JAMES NICHOLS, *Midstate Correction*
*Facility*; K. BUTTIMER, *Assistant Recreation Aid, Midstate*
*Correction Facility*; MS. T. VIRKLER, *Midstate Correction*
*Facility Grievance Director*; INFORMANT/AGENT #1,
*Midstate Correction Facility*; INFORMANT/AGENT #2,
*Midstate Correction Facility*; INFORMANT/AGENT #3,
*Midstate Correction Facility*,

                                          Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

RAY WILLIAMS
Plaintiff, *Pro Se*
99-A-6603
Mohawk Correctional Facility
P.O. Box 8451
Rome, NY 13440

HON. ANDREW M. CUOMO                    MEGAN M. BROWN, ESQ.
Attorney General for the State of New York        Assistant Attorney General
Attorneys for the Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Ray Williams brings this civil rights action, pursuant to 42 U.S.C. §§ 1983

& 1985, alleging that the Defendants conspired to retaliate against him, thereby violating his rights

under the First Amendment and the Due Process Clause of the Fourteenth Amendment.  Dkt. No. 1, Compl.  Specifically, Plaintiff asserts Defendants James Nichols, Lieutenant (Lt.) G. Lawrence, K. Buttimer, and T. Virkler conspired to have Plaintiff removed from the Inmate Liaison Committee ("ILC") in retaliation for several Grievances he filed against Buttimer and Nichols.  *Id.* at ¶ 1.

Plaintiff now moves for Summary Judgment, pursuant to FED. R. CIV. P. 56, to which the Defendants have responded in opposition with a Cross-Motion for Summary Judgment.  Dkt. Nos. 37 & 43.  For the reasons that follow, it is recommended that the Defendants' Cross-Motion for Summary Judgment be **granted**.

## I. FACTS

Pursuant to Local Rule 7.1(a)(3), any motion for summary judgment must have attached to it a statement of material facts containing "each material fact about which the moving party contends there exists no genuine issue.  Each fact listed shall set forth a specific citation to the record where the fact is established."  N.D.N.Y.L.R. 7.1(a)(3).  The opposing party is then required to file a response which "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs."  *Id.*

Attached to Plaintiff's Motion for Summary Judgment is a "Preliminary Statement Pursuant to Rule 7.1," which consists of a series of accusations largely duplicitive of those made in his Complaint.  *See* Dkt. No. 37, Pl.'s Mot. for Summ. J., Pl.'s 7.1 Statement.  Unsurprisingly, the Defendants have denied all but a few those accusations in their Response to Plaintiff's 7.1 Statement.  Dkt. No. 43-4, Resp. to Pl.'s 7.1 Statement.  In support of their Cross-Motion for Summary Judgment, Defendants also submitted a Statement of Material Facts Pursuant to Rule 7.1.  Dkt. No. 43-5, Defs.' 7.1 Statement.  Plaintiff submitted a Response to the Defendants' 7.1

Statement that does not mirror the Defendants' 7.1 Statement, nor does it contain specific denials or admissions of any of the facts proffered therein. Rather, it is a general rebuttal of the Defendants' 7.1 Statement, again containing an array of accusations concerning his claims.

The Local Rules state that "[a]ny facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." N.D.N.Y.L.R. 7.1(a)(3) (emphasis in original). Because Plaintiff has failed to adhere to the Local Rules with respect to both his 7.1 Statement and his Response to the Defendants' 7.1 Statement, we must rely on Defendants' 7.1 Statement for our discussion of the facts. However, because Plaintiff is proceeding *pro se*, we will not deem admitted any fact that Plaintiff has denied in his Complaint, 7.1 Statement, or Response to the Defendants' 7.1 Statement.

Plaintiff arrived at Mid-State Correctional Facility ("Mid-State") in January 2004 and was elected to the Inmate Liaison Committee ("ILC") in January 2005. Defs.' 7.1 Statement at ¶ 1. The ILC allows the general population of inmates to communicate their concerns with the executive team, which consists of deputy superintendents. *Id*. at ¶ 2. Plaintiff was removed from the ILC after receiving a Misbehavior Report on May 20, 2005. *Id*. at ¶ 3. In 2005, Defendant James Nichols was the Deputy Superintendent of Programs ("DSP"), and in that role he met with the ILC.[1]

Since 1992, Defendant Kevin Buttimer has been the Recreation Supervisor at Mid-State, and he has also served as the Staff Advisor for the ILC at Mid-State since 1984. *Id*. at ¶¶ 9-10. As Recreation Supervisor, one of his responsibilities is to provide inmates with the opportunity to view movies. *Id*. at ¶ 11. Buttimer chooses movies based on several factors, including suggestions from

---

[1] Defendants characterize the ILC as a "subcommittee" in their 7.1 Statement, a categorization that is refuted by Plaintiff. *See* Pl.'s Resp. to Defs.' 7.1 Statement at ¶¶ 2-4. For the purposes of our analysis, it matters not whether the ILC was a committee or sub-committee.

the inmates.  Inmates' suggestions are usually communicated through representatives on the ILC or from inmates in charge of organizations sponsoring a movie night.  *Id.* at ¶ 13.  If there was a consensus amongst inmates on a particular movie that was appropriate, Buttimer would try to get that movie.  *Id.* at ¶ 14.

Plaintiff filed Grievances against both Buttimer and Nichols, complaining that they ignored the movie list and conspired to have him removed from the ILC.[2]  *Id.* at ¶ 15.  On May 12, 2005, Plaintiff was scheduled for a Hearing on those Grievances before the Inmate Grievance Committee ("IGRC"), but he failed to appear for his call-out.  *Id.* at ¶ 16.

On May 16, 2005, Plaintiff was given another call-out.  Defendants assert that the purpose of the call-out was for Defendant T. Virkler to inform Plaintiff that the Grievance Hearing had been rescheduled to May 19, 2005, due to his failure to appear on May 12th.  *Id.* at ¶ 17.  Allegedly, while Plaintiff was waiting outside the Grievance Office, Virkler told him that an inmate was handling his Grievance, and in response, Plaintiff made a threatening remark about smacking that inmate.  *Id.* at ¶¶ 18-19.  DSP Nichols received a written complaint regarding Plaintiff's alleged threat and passed it on to Deputy Superintendent of Security Kadien[3] for handling.  *Id.* at ¶ 21.

Defendant Gregory Lawrence was the Investigations Lieutenant at Mid-State in 2005, and was responsible for conducting investigations when required, but was not involved in any way with the ILC.  *Id.* at ¶¶ 23-24.  At some point after May 16, 2005, Lawrence received the complaint letter and investigated Plaintiff's alleged threats by contacting the inmate who wrote the complaint and the two witnesses listed in the complaint letter.  *Id.* at ¶¶ 26-27.  One of the witnesses had provided

---

[2] The record does not indicate exactly when these Grievances were filed.

[3] Kadien is not a named Defendant in this action.

Lawrence reliable information in the past, and both witnesses corroborated the complainant's allegations. *Id*. at ¶ 28. On May 20, 2005, Lawrence wrote a Misbehavior Report accusing Plaintiff of threatening another inmate with violence. *Id*. at ¶ 30; Dkt. No. 43, Gregory S. Lawrence, Decl., dated Mar. 6, 2008, Ex. B, Misbehavior Rep., dated May 20, 2005.

Defendant Richard Calidonna was the Food Service Administrator ("FSA") at Mid-State in 2005; as a department head he served as a Superintendent's Hearing Officer for disciplinary hearings. Defs.' 7.1 Statement at ¶¶ 32-34. Calidonna was assigned to preside over Plaintiff's Disciplinary Hearing on the charges brought in Lawrence's Misbehavior Report. *Id*. at ¶ 34. Prior to the start of the Hearing, Calidonna met with Nichols. *Id*. at ¶ 40. Plaintiff asserts that during that meeting, Nichols instructed Calidonna to find Plaintiff guilty of the charges, an accusation the Defendants refute. *See id.* at ¶ 41; Pl.'s Resp. to Defs.' 7.1 Statement at ¶ 8. Calidonna conducted confidential interviews of the three confidential inmate witnesses and independently assessed their credibility. *Id*. at ¶ 36. Calidonna did not provide Plaintiff with the names of the confidential witnesses. *Id*. at ¶ 39.

At the conclusion of the Disciplinary Hearing, Plaintiff was found guilty of violent conduct and threats, and sentenced to 120 days in the Special Housing Unit ("SHU"), loss of commissary, packages, and phones. Dkt. No. 43, Richard Calidonna, Decl., dated Mar. 7, 2008, Ex. B, Disciplinary Hr'g Tr., (hereinafter "Hr'g Tr.") dated Nov. 14, 2006, at p. 96. Plaintiff appealed that decision to Superintendent Donald Selsky, who reversed the decision.[4] Pl.'s 7.1 Statement at ¶ 15;

---

[4] It is unclear on what grounds Selsky reversed the Disciplinary Hearing decision. Plaintiff asserts the decision was reversed because he was not provided certain information, though he does not identify what withheld information caused the reversal. Defendants deny that general claim and state that Selsky reversed the decision only because "plaintiff was not provided with the name of the victim." Defs.' Resp. to Pl.'s 7.1 Statement at ¶ 15. A copy of the decision of reversal has not been provided to the Court by either party.

Defs.' Resp. to Pl.'s 7.1 Statement at ¶ 15.

Plaintiff filed the instant civil rights action on February 9, 2006.  Dkt. No. 1, Compl.

## II.  DISCUSSION

### A.  Standard of Review

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed

allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289-90 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

"[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Employees & Rest. Employees Union, Local 100 of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it . . . . [and] a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc. v. United States*, 996 F.2d at 1461.

**B.  Due Process Claims**

Plaintiff makes the following due process claims: (1)  he was not given proper notice of the charges against him; (2) he was denied the right to produce evidence in his own defense; (3) he was denied the right to call witnesses; (3) Calidonna wrongly withheld the substance of the letter that prompted Lawrence's investigation and subsequent Misbehavior Report against Plaintiff; (4) Calidonna did not interview the three inmate informants; and (5) the evidence presented against him was insufficient to convict.

In order to state a procedural due process claim pursuant to the Fourteenth Amendment, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).  Such interests are derived from the Fourteenth Amendment Due Process Clause itself or from state statute or regulations.  *Id*.

The Supreme Court has narrowly circumscribed the scope of liberty interests emanating from the Due Process Clause to protect "no more than the 'most basic liberty interests in prisoners.'" *Id.* (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)).  Furthermore, "changes in the conditions of confinement having a substantial adverse impact on the prisoner are not alone sufficient to invoke the protections of the Due Process Clause '[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him.'" *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)).

However, when a prisoner is subjected to conditions that are "unexpected," *Sandin v. Conner*, 515 U.S. 472, 484 (1995), and  "qualitatively different from the punishment characteristically suffered by a person convicted of crime,"  the Due Process Clause itself confers

a liberty interest. *Vitek v. Jones*, 445 U.S. at 493 (holding an involuntary transfer to a state mental hospital implicated a liberty interest protected by the Due Process Clause); *see also*, *Washington v. Harper*, 494 U.S. 210 (1990) (finding the Due Process Clause provides a liberty interest in being protected from the involuntary administration of psychotropic drugs).

In the case at bar, Plaintiff's disciplinary confinement in SHU does not constitute an "unexpected" change in condition, nor did those conditions exceed the sentence imposed upon him. *See Dawes v. Dibiase*, 1997 WL 376043, at *4 (N.D.N.Y. July 3, 1997) (citing *Washington v. Harper* & *Vitek v. Jones* for the proposition that the Due Process Clause will apply by its own force only for deprivations much more severe than solitary confinement for a year). Therefore, Plaintiff does not have a liberty interest in remaining free from SHU confinement emanating from the Due Process Clause itself.

State statutes and regulations may also confer liberty interests to prisoners. *Arce v. Walker*, 139 F.3d at 334 (citing *Kentucky Dep't of Corr.* v. *Thompson,* 490 U.S. at 460). The Supreme Court held in *Sandin v. Conner* that state created liberty interests shall be limited to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. at 484. Thus, a prisoner asserting a denial of due process as a result of segregated confinement or loss of privileges must (1) make a threshold showing that an atypical and significant hardship was imposed upon him, and (2) establish that the "state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

While the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard, *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir.

1999), it has made clear that confinement in SHU for a period of one year constitutes atypical and significant restraint on inmates, deserving due process protections, *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (stating that confinement in SHU exceeding 305 days was atypical); *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (finding 305 days of SHU confinement atypical).  At the other end of the spectrum, the Second Circuit has held that 101 days in SHU, without additional indicia of atypical conditions, does not confer a liberty interest. *Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) (total of 101 days in SHU, which included confinement for 23 hours per day, no more than three showers per week, limited library privileges, no telephone privileges, constant noise, and inmates occasionally throwing feces at each other, did not create a liberty interest).

In this case, Calidonna sentenced Plaintiff to 120 days in SHU, but he served only 89.  Dkt. No. 43, Megan M. Brown, Esq., Affirm., dated Mar. 10, 1998, Ex. A, Pl.'s Dep. Tr., dated Aug. 10, 2007, at p. 43.  In analyzing the whether a Plaintiff suffered an atypical and significant confinement, courts must look to the actual punishment served. *See Scottt v. Albury*, 156 F.3d 283, 287 (2d Cir. 1998) (cited in *Porter v. Gummerson*, 2007 WL 446026, at *3 (N.D.N.Y. Feb. 8, 2007); *see also Sealey v. Giltner*, 197 F.3d at 587(adding up the days plaintiff actually spent in SHU for which the defendant was responsible).  There is no allegation nor evidence on the record that the conditions inside SHU during Plaintiff's 89 day confinement were atypical or otherwise significant. *See Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004) (noting that SHU confinements of less than 101 could constitute atypical and significant hardships if the conditions were more severe than the "normal SHU conditions of *Sealey*").  Therefore, Plaintiff has failed to identify the existence of a liberty interest that could give him a cause of action under the Due Process Clause of the Fourteenth Amendment.  Because there is no liberty interest at stake, we need not address the merits of

*-10-*

Plaintiff's due process claims.

It is therefore recommended that Plaintiff's due process claims be **dismissed**.

### C. Retaliation Claims

Plaintiff claims the Defendants conspired against him in retaliation for Grievances he filed against Buttimer and Nichols. Am. Compl. at ¶ 1. The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove, "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted). Thus, there must be a "causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

A plaintiff may meet the burden of proving an inappropriate retaliatory motive by presenting circumstantial evidence of a retaliatory motive, such as temporal proximity, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d at 138-39 (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary

charges on appeal as unfounded).  Other factors that can infer an improper or retaliatory motive include the inmate's prior good disciplinary record, vindication at a hearing on the matter, and statements by the defendant regarding his motive for disciplining plaintiff.  *McEachin v. Selsky*, 2005 WL 2128851, at *5 (N.D.N.Y. August 30, 2005) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995)).

Moreover, "in the prison context [the Second Circuit has] previously defined 'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'"  *Gill v. Pidlypchak*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (emphasis in original).  This objective test will apply even though a particular plaintiff was not himself deterred.  *Id.*  If the plaintiff can carry that burden, the defendants will still be entitled to summary judgment if they can show, by a preponderance of the evidence, that they would have taken the same action in the absence of the prisoner's First Amendment activity.  *Davidson v. Chestnut*, 193 F.3d 144, 148-49 (2d Cir. 1999); *see Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998); *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994).

The Supreme Court has noted that the right to petition government for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights."  *See United Mine Workers of Am., Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967).  The Second Circuit has held that within the prison context, "inmates must be 'permit[ted] free and uninhibited access . . . to both *administrative and judicial* forums for the purpose of seeking redress of grievances against state officers.'"  *Franco v. Kelly*, 854 F.2d at 589 (quoting *Haymes v. Montanye*, 547 F.2d 188, 191 (2d Cir. 1976)) (emphasis and alterations in original).

*-12-*

In this case, Plaintiff has established the first element of this claim by asserting that the retaliation was motivated by his filing of several Grievances against Buttimer and Nichols, which is constitutionally protected conduct. However, Plaintiff has failed to show any causal connection between the Grievances he filed and the alleged adverse actions taken against him. A summary of the Defendants' alleged actions taken in furtherance of the conspiracy is helpful to our analysis.

Plaintiff alleges the following: Virkler arranged to have him come to the Grievance Office on May 16, 2005, so that three inmate informants/conspirators could falsely allege that they heard Plaintiff make violent threats to an inmate. One of those inmate informants/conspirators wrote a letter to Nichols, falsely accusing Plaintiff of threatening him. Nichols must have known that the letter was untrue. After receiving the order to investigate the incident and taking the false testimony of the other two inmate informants/conspirators, Lawrence issued a false Misbehavior Report against Plaintiff. Lawrence also must have known that the testimony he received was false. Finally, Nichols ordered Calidonna to find Plaintiff guilty at his Disciplinary Hearing. Calidonna repeatedly violated Plaintiff's due process rights at the Disciplinary Hearing and followed Nichols' order to find him guilty despite insufficient evidence. All these acts were taken in retaliation for Grievances Plaintiff filed against Buttimer and Nichols, and had the intended consequence of removing Plaintiff from the ILC.

Plaintiff has made no showing nor argument as to why Virkler, Lawrence, and Calidonna would retaliate against him for his filing Grievances against Buttimer and Nichols. Indeed, Virkler began to work as Grievance Program Supervisor at Mid-State April 2005, and had known Nichols and Buttimer for approximately six weeks at the time of the alleged set-up. Virkler Decl. at ¶ 3. In addition, Lawrence and Calidonna had no connection to the ILC during the time period relevant to

Plaintiff's claims, and therefore no apparent reason to seek his removal therefrom.  Calidonna Decl. at ¶ 11 & Lawrence Decl. at ¶ 4.

With respect to Buttimer, Plaintiff has failed to allege that he took any specific adverse action in retaliation against him.  While Plaintiff alleges that Buttimer was part of the conspiracy to have him removed from the ILC, he does not identify any adverse act taken by Buttimer in furtherance of the conspiracy.  *See generally* Compl.

Similarly, aside from asserting that Nichols was the "mastermind" of the conspiracy against him, the only specific retaliatory act Plaintiff has alleged against Nichols is that he instructed Calidonna to find him guilty at the Disciplinary Hearing.  Compl. at ¶ 9.  Plaintiff contends an audio tape recording of the Disciplinary Hearing, which he has submitted as an Exhibit along with his Motion, contains an admission from Calidonna that he was told by Nichols to find Plaintiff guilty.  *Id.* at ¶ 19.  Notably, Plaintiff does not identify which of Calidonna's statements made during the Disciplinary Hearing could lead to such a conclusion.  Calidonna's only admission on the audio tape and in the transcription of that recording[5] is that he spoke with Nichols before the Hearing started.  Hr'g Tr. at pp. 2-3.  Both Nichols and Calidonna declare that the former did not instruct the latter to find Plaintiff guilty.  Calidonna Decl. at ¶ 10; Nichols Decl. at ¶ 16.  Thus, beyond his conclusory allegations, Plaintiff has failed to offer any proof that Nichols took any adverse actions against him.[6]

[5] Plaintiff asserts in his Response to the Defendants Cross-Motion for Summary Judgment that the Hearing Transcript submitted as an Exhibit to the Defendants' Cross-Motion has been altered and is in fact a "completely different version" of what transpired at the Hearing. Pl.'s Resp. to Defs.' 7.1 Statement at ¶ 6.  After listening to the tape and comparing it to the Transcript, the Court finds Plaintiff's contentions baseless.  To the extent that there are discrepancies between the audio tapes and their transcription, they are clearly unintentional and caused by human error.

[6] As circumstantial proof of the conspiracy, Plaintiff alleges that until May 20, 2005, he had not received any misbehavior reports for a period of three years.  However, the record shows that Plaintiff received Misbehavior Reports in June and September, 2003, less than two years before he received the Misbehavior Report from Lawrence.  Brown Affirm, Ex. B, Inmate Disciplinary Hist.

For all these reasons, it is recommended that Plaintiff's retaliation claims be **dismissed**.

### D.  False Misbehavior Report

As discussed above, Plaintiff asserts that Lawrence filed a false Misbehavior Report against him.  Compl. at ¶ 2.  To the extent Plaintiff intended that claim to be considered separately from his retaliation and conspiracy claims, it should be **dismissed**.  Even assuming that the Misbehavior Report was a prevarication, there is "no general constitutional right to be free from being falsely accused in a misbehavior report."  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); *see also Gill v. Riddick*, 2005 WL 755745, at *7 (N.D.N.Y. Mar. 31, 2005).

### E.  Conspiracy Claims

Plaintiff accuses the Defendants of conspiring to retaliate against him for Grievances he filed against Buttimer and Nichols in violation of §§ 1983 & 1985.  Compl. at ¶ 1.

The third subsection of 42 U.S.C. § 1985, which is the only part of this statute applicable to the claims made in this case, states, in pertinent part:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . , if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the Untied States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

To recover under this section, a plaintiff must show the existence of (1) a conspiracy (2) meant to deprive a person or persons of the equal protection of the laws or privileges and immunities under the laws with "(3) an overt act in furtherance of the conspiracy[,] (4) an injury to the plaintiff's

person or property, or a deprivation of a right or privilege of a citizen of the United States[,]" and (5) "some racial or perhaps otherwise class-based, invidious discriminatory animus[.]" *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citations omitted).  "In this context, 'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex." *Martin v. New York State Dept. of Corr. Servs.*, 115 F. Supp. 2d 307 (N.D.N.Y. 2000) (citations omitted).

In this case, Plaintiff has failed to allege any racial or class-based invidious discriminatory animus on the part of the Defendants.  Rather, he has asserted that the alleged conspirators were motivated by the Grievances he filed against Buttimer and Nichols.  Compl. at ¶ 1.  Because the Complaint is devoid of any allegation of racial or class-based animus, Plaintiff has failed to state a viable § 1985 conspiracy claim.  *See Lewis v. Goord*, 2008 WL 902179, at *3 (N.D.N.Y. Mar. 31, 2008) (dismissing a § 1985 claim when Plaintiff failed to allege racial or class-based animus) (citation omitted).

To support a conspiracy claim under § 1983, a plaintiff must demonstrate (1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002).

Plaintiff offers no evidence of an agreement between the Defendants to conspire against him. Instead, Plaintiff merely asserts that the agreement is self-evident from the circumstances of the Misbehavior Report filed against him and his subsequent conviction at the Disciplinary Hearing. In the absence of any evidence supporting the above theory, we do not see how any reasonable jury could conclude that an agreement to conspire against Plaintiff existed between the Defendants.  *See*

*-16-*

*Porter v. Selsky*, 287 F. Supp. 2d 180, 187 (W.D.N.Y. 2003) (granting summary judgment when plaintiff failed to adduce any facts of an agreement to conspire).

Furthermore, Plaintiff has not shown that a material question of fact exists concerning his retaliation and due process claims.  Because Plaintiff has not shown a deprivation of a federal right, "there can be no civil rights conspiracy to deprive that right." *See Young v. County of Fulton*, 160 F.3d 899, 904 (2d Cir. 1998) (citation omitted).

### F.  Non-State Actors

Finally, Plaintiff's claims against Defendants Informant/Agent # 1, 2, & 3 are also without merit.  To state a claim against a non-state actor, " the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Ciambriello v. County of Nassau*, 292 F.3d at 324 (internal quotation marks and citation omitted).  A plaintiff must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit." *Gebman v. Kelly*, 2008 WL 3413955, at *3 (N.D.N.Y. Aug. 8, 2008) (internal quotation marks and citation omitted).

In this case, Plaintiff has offered no evidence of a meeting of the minds between the alleged inmate informants and the other Defendants.  Plaintiff simply alleges in conclusory fashion that an inmate filed a false complaint against him that was falsely corroborated by other inmates.  Absent any evidence of an agreement between these non-state actors and the other Defendants, these claims should be **dismissed**.  *Zemsky v. New York*, 821 F.2d 148, 151-52 (2d Cir. 1987) (conclusory allegations that a non-state actor conspired with a state actor does not suffice to state a § 1983 claim).

*-17-*

## III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Motion for Summary Judgment (Dkt. No. 37) be **DENIED**; and it is further

**RECOMMENDED**; that the Defendants' Cross-Motion for Summary Judgment (Dkt. No. 43) be **GRANTED**, and the Plaintiff's Complaint (Dkt. No. 1) **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:  September 11, 2008
       Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-18-*